IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

02 MAY 29

N.D. OF ALABAMA

CONSUELO SADLER )
)
    Plaintiff, )
)
v. ) CIVIL ACTION NO. 99-PWG-1492-S
)
WEISER SECURITY SERVICES, INC., )
) **ENTERED**
    Defendant. )
) **MAY 2 9 2002**

## MEMORANDUM OF OPINION

    Consuelo Sadler, plaintiff herein, filed this complaint against Weiser Security Services ("Weiser") alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq.*, and 42 U.S.C. § 1981, based on hostile work environment, race discrimination and retaliation. The complaint further alleged state causes of action for negligent/wanton supervision and retention, assault and battery, invasion of privacy and outrage.

    The parties have consented to the magistrate judge's jurisdiction pursuant to 28 U.S.C. § 636(c)(1). This matter is before the magistrate judge on Weiser's motion for summary judgment.

    In the memorandum in opposition to Weiser's motion for summary judgment Ms. Sadler has voluntarily dismissed her state law claims of assault and battery, invasion of privacy and her federal race discrimination claim. Although Ms. Sadler did not explicitly dismiss her state claims for negligent supervision and retention, and outrage, these claims were not factually or legally argued in her opposition and have been abandoned. *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1325-26 (11th Cir. 2000).

24

Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Rule 56, *Federal Rules of Civil Procedure*.  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989).  Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted].  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.   This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

2

The following facts are undisputed or, if disputed, viewed in the light most favorable to Sadler, the non-moving party.

On February 23, 1998 Consuelo Sadler was hired by Weiser Security Services, Inc. as a security officer. (Defendant's Exhibit C and Sadler deposition, p.59). Also on February 23, 1998 Sadler signed the handbook receipt and acknowledgment form (defendant's Exhibit D) although Sadler has also stated "I did not receive a handbook." (Plaintiff's affidavit, p.1). The handbook contains Weiser's policy of sexual harassment. (Person deposition, pp.52-53, affidavit of Rodney Harris). Weiser's "Policy Against Discrimination of Sexual Harassment" (defendant's exhibit E) also "bears [Sadler's] signature but [she does] not recall signing it." (Sadler's affidavit, p.1). Although Sadler states in her affidavit that "the Policy appears to be altered to add my signature," (Sadler's affidavit, p.1), in her deposition, Sadler's counsel objected to use of the policy not because it appears to have been altered but "because of the discrepancies in the date." (Sadler deposition, p.60). Sadler's signature was dated February 23, 1998 while the signature of Rodney Harris was dated February 23, 1993. (Defendant's Exhibit E). Sadler testified in deposition:

> Q:   It's Weiser's policy against discrimination and sexual harassment; is that correct?
>
> A:   I believe so.
>
> Q:   Okay. And is that your signature on it?
>
> A:   Yes, sir.
>
> Q:   Okay. And the date on that is what?
>
> A:   February 23, 1998. My signature.
>
> Q:   The date appears to say 1993, doesn't it?
>
> A:   That's my signature.

3

Q:    Should that date by 1998?

A:    Yes, sir.

Q:    That's the date – February 23, 1998, is the date that you started working for Weiser?

A:    Yes, sir.

Q:    Okay.  The date next to your signature is February 23, 1998; is that correct?

A:    Yes, sir.

Q:    Okay.  And that is your signature?

A:    Yes, sir.

Q:    It's your handwriting?

A:    This right here.

Q:    Okay.

      MS. POWE:    Do you have the original document?

      MR. SMITH:  Not with me, no.

      MS. POWE:    But you do have the original document?

      MR. SMITH:  I assume so.

      MS. POWE:    I'm going to object to it because of the discrepancies in the date.  I would like to see the original document.

      MR. SMITH:  Your objection is noted on the record, but I'm going to mark this as Defendant's Exhibit 2.

Q:    But you said earlier that you didn't read this?

A:    No, sir.

Q:    You could have read it, couldn't you?

A:    Yes, sir.

4

Q:      You just chose not to?

A:      It was signed when I was filling out [an] application.  I was in a hurry.

Q:      But you chose not to read it?

A:      Yes, sir.

(Sadler deposition, pp.59-61).

On cross-examination Ms. Sadler testified that she did not recall signing a document which appears to be the Policy against Discrimination of Sexual Harassment although the record is not clear:

Q:      (BY MS. POWE) Defendant's Exhibit 2, we have established that that is your signature.  I'm asking you if you remember signing this document?

A:      No.

. . . .

Q:      All right.  Were you ever given a copy of a sexual harassment policy?

A:      Not that I can recall.

(Sadler deposition, pp.141-143).

Ms. Sadler was assigned by Weiser to the Department of Human Resources (DHR) where she was sexually harassed by Michael Smith, a co-worker, beginning in March 1998.  (Sadler deposition, pp. 65,68).  The harassment involved approximately ten incidents from March 1998 through October 1998 when Smith kissed Sadler on the cheek.  (Sadler deposition, pp.72-75).  Sadler did not tell anyone at DHR nor Weiser about any of the incidents (Sadler deposition, pp.73-77) until either December 20 or 21, 1998[1] when she reported the matter to Sergeant William Stokes,

---

[1]      In her December 30, 1998 EEOC charge of discrimination Sadler stated "On December 21, 1998, I made a verbal complaint of sexual harassment to my immediate supervisor."  (Plaintiff's Exhibit 9).  Almost a year later, in her December 6, 1999 deposition, she testified that she reported the harassment to Stokes on December 21.  (Sadler deposition, p.78).  In her September 19, 2000 affidavit, prepared almost two years after the first

the Weiser site supervisor.  (Sadler deposition, p.78; Sadler affidavit).  According to Ms. Sadler,

Smith last engaged in inappropriate conduct in October 1998.  (Sadler deposition, pp.90,95).  In

October 1998 Sadler told Smith to stop bothering her.  (Sadler deposition, p.93).  Smith continued

to tell Sadler to quit her job in October, November and December 1998.  (Sadler deposition, p.93).

When she told Smith in October 1998 that she would report him if he did not stop, he threatened her

by stating that he could find her wherever she went.  (Sadler deposition, pp.96,97).  Ms. Sadler did

not include this threat in her December 22, 1998 written report to Weiser.  (Sadler deposition,

pp.96,97).  Smith did not say or do anything inappropriate to Sadler after December 21, 1998.

(Sadler deposition, p.100).  Pearson and Harris spoke to Smith on December 28, 1998.  He denied

the allegations made against him and asked to be moved away from Sadler.  (Harris affidavit; Person

deposition, p.171).  On December 29, 1998 Smith worked at DHR.  On December 30, 1998 he began

a new work schedule under which he would have no contact with Sadler.  (Harris affidavit).

      Prior to Sadler's harassment complaint, her personnel file did not contained no

written reprimands.  (Pearson deposition, pp.87-89, 145-46).  Sadler argues that "Upon receiving

---

reporting of the alleged harassment, Sadler stated:

> On or about December 20. 1998, I complained to my supervisor that Michael Smith
> was sexually harassing me.  I can not be certain of the date; however, I am certain
> that the very next day after my complaint I received notice from my supervisor that
> I had performance problems.

The court takes judicial notice of the fact that December 20, 1998 was a Sunday while December 21, 1998 was
a Monday.  In her deposition, Sadler testified that she relieved Smith on Saturdays and Sundays and worked
7:00 a.m. until 7:00 p.m.  (Sadler deposition, pp.69-70).  She further testified that she relieved Stokes on
Mondays and Tuesdays and worked 3:00 p.m. until 11:00 p.m.  (Sadler deposition, p.70).  Since Sadler reported
the alleged sexual harassment to Stokes as she was relieving him (Sadler deposition, p.78) it is more likely than
not that she reported the harassment on December 21 rather than December 20.

In her deposition, Sadler was apparently not questioned about whether she reported the harassment while her
supervisor was reprimanding her.  Her affidavit was an attempt to clarify that she first reported the harassment
and thereafter was reprimanded.  This does not specifically contradict her deposition testimony.

plaintiff's notice of sexual harassment, defendant contiguously [sic], began padding plaintiff's employment file with unsubstantiated reprimands." (Sadler's brief, p.3). Sadler complains that her file did not reflect written documentation of verbal counseling. Pearson, however, had testified that she had counseled Sadler twice and was further advised by Stokes when he verbally counseled Sadler. (Pearson deposition, pp.88-89). Sadler also complains that a memorandum to the file by Stokes concerning the December 21, 1998 verbal counseling and report of harassment was not signed. In her affidavit, Sadler states "Never prior to my complaint of harassment had I been reprimanded or given notice of performance problems."

On December 21, 1998, one day after Sadler reported the sexual harassment, Stokes verbally counseled Sadler about allegations that he had interfered with DHR business.[2] (Plaintiff's affidavit; plaintiff's exhibit 4(b)). Sadler was counseled again on January 25, 1999 for failing to notify a social worker of children turning themselves in. Sadler was removed from the DHR site after this incident. (Defendant's Exhibit H). On February 1, 1999 a coaching and counseling record based on Sadler's failure to report for scheduled training at Bankhead Towers was mailed to Sadler by certified mail. (Defendant's Exhibit H). In her affidavit, Sadler states that she was not informed of her work schedule for Bankhead Towers. She states that she would not have abandoned her job. (Plaintiff's affidavit). In her deposition, however, Sadler testified that she did not remember if she was scheduled to work on January 29 or 30, 1999 "because I refused to be moved to another location. That's why I didn't recall I was supposed to show up for work." (Sadler deposition, p.120).

_____

[2]      Weiser maintains that it was at this counseling that Sadler first informed Stokes that she had been sexually harassed. Because this fact is in dispute, the court on Weiser's motion for summary judgment, must view the facts in the light most favorable to Sadler.

Sadler also states that "defendant was aware plaintiff was off work pursuant to the instructions of her doctor. Consequently, she could not go in to receive a schedule." (Plaintiff's brief, p.3).[3/] According to her the physician's verification however, Sadler was only excused from work from January 21, 1999 through January 25, 1999 with a return to work date of January 26, 1999. (Plaintiff's Exhibit 8). Moreover, in a letter signed by Sadler on January 25, 1999 Sadler had accepted a schedule at Bankhead Towers which established her work hours to be Saturday, 8:00 a.m. until 8:00 p.m., Sunday, 8:00 a.m. until 8:00 p.m., and Monday, 4:00 p.m. until 12:00 Midnight. (Defendant's Exhibit F). Ms. Sadler states that her last contact with Weiser was January 25, 1999. (Plaintiff's Deposition, p.125).

### Hostile Work Environment

Sadler alleges that she was subjected to a hostile work environment based upon "several incidents of sexual harassment from her co-employee, Michael Smith." (Plaintiff's brief, p. 2). To establish a *prima facie* case of hostile work environment based on sexual harassment, Sadler must establish (1) she is a member of a protected group; (2) she was the subject of unwelcome sexual harassment; (3) the harassment occured because of her sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment; (5) a basis for holding her employer liable for the harassment. *Breda v. Wolf Camera & Video*, 222 F.3d 886, 889 (11th Cir. 2000); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1243 (11th Cir. 1999), *cert. denied* 529 U.S. 1068 (2000). Weiser contends that Sadler failed to establish the fourth and fifth elements

---

[3/]   In her deposition, Ms. Sadler took the position that she did not fail to report on January 29, 1999 because she had been told by Ronald Harris on January 21, 1999 that she was "not permitted to work in Weiser." (Sadler deposition, pp.112,116,125). She also testified in deposition, however, that she was given an opportunity to go to Bankhead Towers or St. Martin's in the Pines but refused to go to either because she "didn't want to leave" and they were "too far away." (Sadler deposition, pp.122-123).

of a hostile work environment claim. Even assuming that the multiple kissing incidents followed by the threats constituted harassment that was sufficiently severe or pervasive to alter the terms and conditions of her employment, [4/] Sadler has failed to establish a basis for holding Weiser liable for the harassment.

Weiser contends that Sadler "totally failed to follow Weiser's grievance procedure and there is therefore no way for Weiser to have known the[re] was any problem." (Motion for Summary Judgment, p.10). Sadler responds by arguing that any policy was "purely perfunctory and [ ] ineffective to raise as a notice defense." (Opposition, p.19). Arguing that the policy was perfunctory does not relieve Sadler of the responsibility of establishing a basis for holding Weiser liable for the harassment as part of her *prima facie* case. Because the harasser in this case was a co-employee rather than a supervisor, Weiser can only be held directly liable if it knew or should have known of the harassing conduct but failed to take prompt remedial action. *Breda*, 222 F.3d at 889; *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278 (11th Cir. 2002). Sadler has not shown that Weiser had either actual or constructive notice of the harassment nor does it appear that Sadler could so show. Sadler has admitted that she did not tell anyone at DHR or Weiser of the sexual harassment while it was occurring. She has not directed the court to any evidence that management knew of the harassment. She has clearly failed to prove that Weiser had actual knowledge of the harassment.

---

[4/]     The court is assuming for the sake of argument, but not deciding, that Sadler has established that the harassment in the form of unwanted kisses on the cheek was sufficiently severe or pervasive to alter the terms and conditions of her employment.

When a policy prohibiting harassment is ineffective, the employer remains liable for conduct that is so severe and pervasive as to confer constructive knowledge. *Miller,* 277 F.3d at 1279. The following factors are relevant to the issue of constructive notice of harassment:

> (1) the remoteness of the location of harassment as compared to the location of management; (2) whether the harassment occurs intermittently over a long period of time; (3) whether the victims were employed on a part-time or full-time basis; and (4) whether there were only a few discrete instances of harassment.

*Miller*, 277 F.3d at 1278-79, *quoting Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 647 (11th Cir. 1997). The harassment occurred at the DHR work site rather than at Weiser. Sadler does not identify any member of management present where the harassment alleged occurred location when such harassment took place. The harassment occurred from March 1998 until October 1998. Only ten instances of harassment took place. Both the victim and the harasser were full-time employees; however, they worked the same day only two days a week. Sadler and Smith did not work the same shift. Sadler relieved Smith at the end of his shift. It is clear that neither Stokes, Sadler's supervisor, nor any Weiser manager should have known about Smith's harassment of Sadler prior to her complaints made on December 20 or 21, 1998.

Weiser became aware of the harassment only on December 20 or 21, 1998. Weiser obtained a written statement from Sadler on December 22, 1998. Weiser managers spoke to Smith on December 28, 1998. After this meeting, Smith began a new work schedule on December 30, 1998 which created no opportunity for contact with Ms. Sadler. Weiser took prompt remedial action. Sadler's claim of hostile work environment based on sexual harassment is legally

10

unsustainable because of a failure to establish a *prima facie* case. There is no evidence upon which actual or constructive knowledge of the harassment could be based.

Retaliation

Sadler argues that Weiser retaliated against her for complaining of sexual harassment to Weiser and for filing an EEOC charge of discrimination by removing her from her DHR post and subsequently terminating her employment. "To establish a *prima facie* case of retaliation under Title VII, a plaintiff must prove the following elements: (1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision." *Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1200 (11th Cir. 2000). Sadler's complaint about sexual harassment to her supervisor and her EEOC charge clearly constituted protected activity. *Pipkins, supra*. Based on the termination and possibly the transfer as well, the court will assume that Sadler suffered an adverse employment action. Weiser argues only that Sadler has failed to establish a causal link between her complaint of sexual harassment and transfer and subsequent termination. A plaintiff may establish a causal link by showing "that the protected activity and the adverse action were not wholly unrelated." *Clover v. Total Systems Service, Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999), *quoting Simmons v. Camden County Bd. Of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985); *Berman v. Orkin Exterminating Co., Inc.*, 160 F.3d 697, 701 (11th Cir. 1998). "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." *Clover, supra, quoting Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993). A close temporal proximity between events may also support a finding of causal connection. *See Wascura v. City of South Miami*, 257 F.3d 1238, 1245 (11th Cir.

11

2001).  Stokes and Pearson had notice of Sadler's internal complaint of sexual harassment on December 20 or 21, 1998.  On January 27, 1999, Janis M. Mire, the Vice President of Human Resources, mailed Weiser's Position Statement to the EEOC; thus Weiser's Department of Human Resources clearly had knowledge of the EEOC charge by January 27, 1999. (Plaintiff's exhibit 10). The transfer occurred sometime between January 20, 1999 when Sadler was told not to report back to DHR and January 25, 1999 when she signed a letter accepting a work schedule at Bankhead Towers.  (Defendant's exhibit F).   The "termination" occurred subsequent to the coaching and counseling report for failing to report to Bankhead Towers which was mailed to Sadler by certified mail on February 1, 1999. (Defendant's exhibit H).[5/] The coaching and counseling report was signed by Rodney Harris and Sue Pearson.  Pearson was a participant in both the transfer and the termination and was aware of the complaint of sexual harassment and presumably the EEOC charge alleging sexual harassment and the protected activity and adverse employment decisions occurred in close proximity.  Sadler has established a causal connection between her complaint and EEOC charge and her transfer and subsequent termination.

Because Sadler has established a *prima facie* case of retaliation, "the inference is raised that discriminatory intent motivated the adverse employment action, and the burden shifts to the employer to 'clearly articulate in a reasonably specific manner a legitimate non-discriminatory reason' for the adverse action with credible evidence." *Berman*, 160 F.3d at 702.  Weiser relies on Ms. Pearson's deposition testimony that Sadler was removed from DHR because Ron Bailey, the assistant director of DHR, requested that Ms. Sadler be removed because of her interference in DHR's business. (Pearson deposition, pp. 84, 85, 171, 172). Weiser further argues that Sadler was

---

[5/]     Interestingly, neither plaintiff nor defendant attempts to fix the point in time when termination occurred.

terminated for her failure to appear for work as scheduled at Bankhead Towers after signing a paper indicating that she would work at that site. (Defendant's exhibit F).   The court concludes that Weiser has articulated legitimate non-discriminatory reasons for transferring and terminating Sadler.

Sadler merely asserts a claim of **"MENDACITY"** in her attempt to meet the burden of showing that the reasons articulated by Weiser are pretext for the true discriminatory animus. *Berman*, 160 F.3d at 702. Sadler argues that there is a lack of documentation of reprimands which allegedly occurred prior to her reporting of the sexual harassment as well as inconsistent or conflicting information provided to EEOC which indicates the reasons articulated by Weiser to be pretextual. She argues that the four documents which exist are not "credible" because "the validity of the reprimands is dubious at best. All three [of the reprimands] are dated after Plaintiff notifie[d] Defendant of the sexual harassment." (Opposition, p.11). She argues that the coaching and counseling records relied upon were not used to coach or counsel her and that there is no indication that she was ever informed of any performance problems prior to the creation of these documents.

Sadler also complains that Stokes's statement was unsigned and she was not apprised of its content. She does not, however, dispute that the reprimand took place on December 21, 1998. Sadler alleges that DHR did not mention her by name in a December 18, 1998 letter that Weiser construed as a complaint directed toward Sadler. The December 18, 1998 letter written by B. R. Stephens of the Jefferson County DHR stated in pertinent part:

> It has been brought to my attention that certain security personnel are making complaints to Ms. Marie Garner concerning activities of the social workers.   In the future, I would ask that any complaints be referred to me for action.  I would also

> like to request that security personnel be reminded of
> the scope and limit of their duties.

(Plaintiff's Exhibit 11).

While the letter did not specifically mention Sadler by name, Ms. Pearson testified:

> [W[hile it doesn't specifically name her, Mr. Stevens
> brought it to my attention that this was done
> generically so that others would – would not follow
> suit, but this was directly to Consuelo. It was done in
> a verbal conversation.

(Pearson deposition, p.160).

Sadler merely asserts that the explanation is implausible. She offers no evidence, however, from which a challenge to the explanation would follow.

Sadler argues that when Weiser responded to her EEOC charge that Sadler had been the subject of complaints "as far back as August 1998," she had no <u>documented</u> complaints. Ms. Pearson testified that, while there was no written documentation, Sadler had been verbally counseled by Pearson on two occasions and by Stokes. (Pearson deposition, pp.87-89).

Sadler also argues that a letter from Angela Collins (plaintiff's exhibit #14) faxed to Weiser on January 19, 1999 complaining of Sadler's failure to notify a social worker when a child was in the building was evidence of pretext because Weiser had solicited negative information about Sadler.[6] Ms. Sadler's removal from DHR was not based on the Collins' letter but, rather, at the

---

[6] Sadler further relies on a letter from Kim Roberts as evidence that Weiser solicited information; however, the July 20, 1998 letter from Roberts (plaintiff's exhibit #15) did not involve Sadler but rather another Security Officer, Jerry George. In that letter, Roberts stated in pertinent part:

> The supervisor from Weiser Security, Jimmy Pope, came into the office on 07-19-
> 98 to inquire about this situation. I declined to make a formal complaint because
> I did not feel that it was warranted based on the above information. Mr. Pope stated
> that Mr. George would be moved to a different location other than DHR.

(Plaintiff's Exhibit #15).

14

request of the DHR assistant director.  Sadler argues that Weiser misrepresented to the EEOC that

DHR requested that Sadler be transferred off their location.  (Opposition, p.15).  In deposition,

Pearson testified that the assistant director of DHR specifically requested Sadler's removal (Pearson

deposition, pp.84,85,171,172).  While Sadler contends that DHR did not request her transfer or

removal from the DHR site, she has not provided any evidence to support her contention.

Sadler argues that Weiser misrepresented to the EEOC that Pearson promptly

conducted an investigation.  In the EEOC position statement, Weiser spoke of the investigation in

the following context.

> After the reprimand, Ms. Sadler informed her
> supervisor that another Security Officer, Michael
> Smith, kissed her when he arrived at work and that
> this had gone on for several months. ...
>
> On the evening of December 21, 1998 [after plaintiff
> informed her supervisor of the alleged harassment]
> field Supervisor, Jimmy Polk had a telephone
> conversation with Ms. Sadler about her allegations.
> Her statement of the circumstances differed from
> what she had told her supervisor earlier that same day.
> ...
>
> ... Polk asked her to make a written statement and
> assured her that her allegation would be taken
> seriously and would be fully investigated.
>
> Ms. Sadler['s] written statement was completed on
> December 22, 1998. ....
>
> . . . .
>
> A statement was taken from Michael Smith by
> William Stokes, his supervisor on December 24,
> 1998.  Mr. Smith states that he has had no physical
> contact with Ms. Sadler other than shaking her hand
> when they were first introduced.  He also states that
> he has never told her anything about quitting her job

> or made any derogatory comments to her or about her.
> Mr. Smith has been a Weiser employee for 3 years
> and has had no complaints from any other co-workers,
> male or female, clients or supervisors. Mr. Smith
> says that Ms. Sadler's comments about him are false.
> ...

(Plaintiff's Exhibit 10, pp.2-3).

This statement is consistent with Pearson's deposition testimony. Sadler maintains that the

investigation occurred only after Weiser received notice of charges from EEOC as evidenced by a

reference to a scheduled meeting with B. R. Stevens concerning her complaint.[2] The meeting with

Stevens, however, would have related to the DHR complaint about Sadler rather than Sadler's sexual

harassment claims. Ms. Sadler has presented no evidence of a misrepresentation to the EEOC

regarding Pearson's investigation into the allegation of sexual harassment

Sadler argues that Weiser failed to follow its disciplinary policy prior to transferring

her. Sadler states that "Weiser testified that its policy is that employees are counseled prior to taking

disciplinary action such as transfers." Pearson did testify that would generally be verbal or written

warnings for infractions. (Pearson deposition, pp.80-81) (emphasis added). Although Sadler relied

on Pearson's testimony to support her position that Weiser failed to follow its own policy, the cited

portion is not applicable to the facts of this case. Moreover, she has ignored testimony that

specifically applied to her situation:

> Q:     ... What's the procedure for removing an employee from a post for cause?
>
> A:     For cause?
>
> Q:     Uh-huh.

---

[2]     Sadler references plaintiff's Exhibit #19; however, she failed to provide a document beneath that tab. She also
failed to provide a document beneath tab #5.

16

A:      The person is notified that they're being removed.  Usually the branch
        manager or the operations manager will speak [to] them and bring them into
        the office, and then they're either reassigned an/or terminated.

Q:      All right.  What would constitute cause for reassignment?

A:      Continuing in infractions, and/or since it's a service contact, <u>if the client for
        whatever reasons asked for an employee to be removed from their particular
        site, then you're obligated to do so</u>

                            . . . .

Q:      All right.  When an employee is removed because the client requests that he
        or she be removed, what is the procedure between the client and Weiser?
        How is that handled?

A:      The client will tell you that they would like that person removed and you do
        so.

Q:      All right.  Do they write it?  Do they send it in writing?  Do they telephone
        you?  Is it a telephone followed by correspondence?  How is it handled?

A:      It can be any of the above.  It can be a verbal communication; it can be a
        written communication.

(Pearson deposition, pp. 81-84).  (Emphasis added).   Plaintiff has failed to present any facts that

actually support her position that Weiser failed to follow its policy prior to her transfer.

        Finally, Sadler argues that, although Weiser asserts that she was terminated because

she failed to report to work, it was actually "the dubious reprimands and complaints which

ultimately lead to Sadler's termination."  In support of this position, Sadler relies on *Gullate v.

Westpoint Stevens, Inc.*, 100 F. Supp. 2d 1315, 1319 (M.D. Ala. 2000).  In *Gullate*, the court held:

> The *prima facie* case requirement must apply to the
> whole termination process, not just the ultimate step
> of firing based on the presence of three disciplinary
> warnings in a twelve month period.  The policy under
> which *Gullate* was ostensibly fired apparently
> consisted of two steps: one, the determination that the
> employee would be issued a disciplinary warning, and

17

> two, termination upon the issuance of a third warning
> in a twelve month period.

*Gullate* is inapplicable. *Gullate* deals with the *prima facie* case in a progressive discipline context. Further, we are beyond the *prima facie* case stage. Ms. Sadler's claims do not involve progressive discipline. Weiser has articulated a legitimate, nondiscriminatory reason for plaintiff's termination. It is plaintiff's burden to show that the reason articulated is pretext for discrimination.

Despite her repeated claims of mendacity, Sadler has been unable to direct the court to any evidence in the record "sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate, nondiscriminatory reasons." *Schoenfeld v. Babbit*, 168 F.3d 1257, 1269 (11th Cir. 1999) *quoting Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 965 (11th Cir. 1997). Weiser is therefore entitled to summary judgment on this claim.

Weiser's Motion for Summary Judgment is due to be GRANTED as to the hostile work environment and retaliation claims. Sadler's state claims of assault and battery, invasion of privacy, negligent and retaliatory supervision and outrage, and the federal claim of race discrimination are due to be DISMISSED.

A separate judgment consistent with this memorandum of opinion will be entered simultaneously herewith.

As to the foregoing it is SO ORDERED this the 25th day of May, 2002.

_____
PAUL W. GREENE
UNITED STATES MAGISTRATE JUDGE

18